*Douglas H. Glenn, Kenneth S. Kabb* and *Robert R. Soltis* for relator.

TOLEDO TRUST COMPANY, TRUSTEE OF TRUST NO. 4117, APPELLEE, *v.* SANTA BARBARA FOUNDATION, APPELLANT; TOLEDO TRUST COMPANY, TRUSTEE OF TRUST NO. 4118, ET AL., APPELLEES.

[Cite as Toledo Trust Co. *v.* Santa Barbara Found. (1987), 32 Ohio St. 3d 141.]

(No. 86-1064—Decided August 26, 1987.)

*Marshall & Melhorn* and *Donald F. Melhorn, Jr.,* for appellee Toledo Trust Company, Trustee for Trust No. 4117.

*Watkins, Bates & Handwork, William F. Bates, John J. McHugh III* and *Gary O. Sommer,* for appellant.

*Robinson, Curphey & O'Connell* and *Michael S. Messenger,* for appellees Toledo Trust Company, Trustee for Trust No. 4118 and Nancy S. Jones.

SWEENEY, J. The crucial question presented by this appeal is the effect, if any, that the order of the California superior court has on the instant proceeding. It is axiomatic that, in interpreting the terms of a will, the intention of the testator is paramount. *Sherman* v. *Sherman* (1966), 5 Ohio St. 2d 27, 34 O.O. 2d 48, 213 N.E. 2d 360; *Johnson* v. *Johnson* (1894), 51 Ohio St. 446, 38 N.E. 61; *Townsend's Exrs.* v. *Townsend* (1874), 25 Ohio St. 477. This rule is equally applicable in determining whether a testamentary power of appointment has been exercised. *Bishop* v. *Remple* (1860), 11 Ohio St. 277, 282; *Arthur* v. *Odd Fellows' Beneficial Assn.* (1876), 29 Ohio St. 557, 561.

The ascertainment of testamentary intent often requires that reference be made to common-law or statutory rules of construction. Where such reference is necessary, the law of the state wherein the testator was domiciled and his will probated is to be applied. *Lozier* v. *Lozier* (1919), 99 Ohio St. 254, 124 N.E. 167.

While the specific issue involved in

this appeal has not been previously submitted for our consideration, we are persuaded that the law of the state in which the decedent resided at the time of her death should apply in determining whether there has been an effective exercise of her testamentary special power of appointment. On this point the observation by the Seventh Circuit Court of Appeals in *White* v. *United States* (C.A. 7, 1982), 680 F. 2d 1156, 1159, is particularly instructive: "Given the realities of the situation, it seems logical to focus on the donee's express, implied, or *constructive* intent to exercise his power as determined by the rules of his state. The language of the donee's will is his own and should be considered according to the laws under which his will was drafted and with which he was presumably most familiar, those of his own domicile." (Emphasis added.) See, also, *In re Morgan Guaranty Trust Co.* (1971), 28 N.Y. 2d 155, 320 N.Y. Supp. 2d 905, 269 N.E. 2d 571; *Ward* v. *Stanard* (1903), 82 App. Div. 386, 81 N.Y. Supp. 906.

Marcia MacDonald Rivas was a California domiciliary at the time of her death. Her will was executed and admitted to probate in the state of California. In its order determining entitlement to distribution of the Rivas estate, the California superior court quite properly applied the cy pres doctrine to the present controversy. It is beyond question that application of the doctrine was in accordance with California law. See *O'Hara* v. *Grand Lodge, Independent Order of Good Templars* (1931), 213 Cal. 131, 2 P. 2d 21; *In re Faulkner's Estate* (1954), 128 Cal. App. 2d 575, 275 P. 2d 818.

We, therefore, hold that the determination of whether a testamentary special power of appointment conferred by an Ohio trust has been effectively exercised by the donee is governed by the law of the jurisdiction wherein the donee was domiciled at the time of the power's purported exercise.

Despite the correct application of California law to the testamentary disposition, appellees, Toledo Trust Company, as trustee of the Pawlak trust, and Nancy Jones, maintain that the judgment of the California superior court is not entitled to full faith and credit because the court failed to obtain jurisdiction over the trustee or the trust res. There are two elements to this argument.

As an initial matter, it is necessary to consider whether appellees were properly apprised of the California proceedings. In stipulations of fact submitted to the Lucas County Court of Common Pleas, Toledo Trust Company has acknowledged receiving notice of the entitlement hearing. Moreover, the findings of the California superior court include a determination that "[a]ll notices of the hearing have been given as required by law."

This court has previously observed that "[a] judgment pronounced by a court of record of general jurisdiction, regular on its face, carries with it the presumption of validity." *Ford* v. *Ideal Aluminum, Inc.* (1966), 7 Ohio St. 2d 9, 13, 36 O.O. 2d 5, 7, 218 N.E. 2d 434, 436. This presumption applies with equal force to judgments rendered by the courts of sister states. Appellees do not contend that the California proceeding failed to comply with the law of that state, nor do they adduce any evidence in support of such contention. We, therefore, hold that a foreign judgment pronounced by a court of general jurisdiction, regular on its face, carries with it the presumption of validity.

An additional component of the argument advanced by appellees concerns the perceived deficiency of the California court in obtaining jurisdiction over the trust assets located in Ohio. In support of their position, ap-

pellees rely upon the holding of the United States Supreme Court in *Hanson* v. *Denckla* (1958), 357 U.S. 235. This argument, however, misapprehends the nature of the California proceeding. In *Hanson* v. *Denckla, supra,* the Supreme Court clearly stated the basis for its determination not to afford full faith and credit to a Florida decision affecting a Delaware trust: "* * * [s]o far as it purports to rest upon jurisdiction over the trust assets, the judgment of the Florida court cannot be sustained." *Id.* at 250. The California judgment in the case at bar presumed to do no such thing. The decision of the California superior court merely sought to ascertain and give effect to the testamentary intent of a California domiciliary. As mentioned above, it was the proper forum to make this determination. Once rendered, the judgment was entitled to full faith and credit in any subsequent Ohio proceeding governing the disposition of the trust assets.

It is our conclusion, therefore, that the determination of the intent of a donee in exercising a testamentary special power of appointment by a court of competent jurisdiction of the state within which the donee is domiciled at the time of the power's exercise is binding in any subsequent judicial proceedings in Ohio and entitled to full faith and credit with respect thereto.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

MOYER, C.J., HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

LOCHER, J., dissents.

LOCHER, J., dissenting. Although I have no quarrel with the general principles of law expressed in the syllabus and majority opinion, I must dissent because it is clear that the California superior court erroneously applied the doctrine of cy pres in the case *sub judice.* Because the California judgment is contrary to California law, and because the California court had no jurisdiction over the trust assets in question, I would hold that the judgment of that court is not entitled to full faith and credit in the courts of Ohio.

To begin, a review of relevant California law reveals a statute which expressly provides for a result contrary to that reached by the California superior court and the majority opinion. California Civ. Code Section 1389.3 states:

"(a) Except as provided in subdivision (b), *when the donee of a discretionary power of appointment* fails to appoint the property, releases the entire power, or *makes an ineffective appointment, in whole or in part, the appointive property not effectively appointed passes to the person or persons named by the donor as takers in default* or, if there are none, reverts to the donor.

"(b) When the donee of a general power of appointment makes an ineffective appointment, an implied alternative appointment to the donee's estate may be found if the donee has manifested an intent that the appointive property be disposed of as property of the donee rather than as in default of appointment." (Emphasis added.)

This statute is clearly on point. The donee, Marcia Rivas, made an ineffective appointment when Alcoholics Anonymous refused to accept more than $500 of the trust distribution. Marcia Rivas also had a discretionary power of appointment. See California Civ. Code Section 1381.4. Thus, under

Section 1389.3(a), the trust assets not effectively appointed by the will of Marcia Rivas pass to the taker in default as provided by the trust document, namely the Roberta Pawlak trust. Also on point is *Estate of Eddy* (1982), 134 Cal. App. 3d 292, 184 Cal. Rptr. 521, in which it was held that under the statute, where a donee failed to effectively exercise a power of appointment in her will, the trust property passed to the donor's son, who was named as the taker in default. In light of the statute and this case, it can only be concluded that the California superior court erred when it applied the doctrine of cy pres to the trust assets in question.

The California decision is also invalid because it ignored the express language of the trust to the effect that if the donee failed to make an effective appointment, the trust property was to be held for or distributed to one of the named takers in default. The cy-pres doctrine is designed to give effect to the intent of a donor, not to thwart it. For this reason, the cy-pres doctrine does not apply where, as here, the donor's intent is to the contrary. See, *e.g.,* Restatement of the Law 2d, Trusts (1959), Section 399, Comment *c,* at 299; Section 401, Comment *d,* at 311.

Generally, the final judgment of a sister state's court must be given full faith and credit where that court had jurisdiction over the parties and the subject matter, even if the judgment is erroneous. See *Milliken* v. *Meyer* (1940), 311 U.S. 457, 462. However, a judgment of a sister state's court is subject to collateral attack in Ohio if there was no subject matter or personal jurisdiction to render the judgment under the sister state's internal law, and under that law the judgment is void.

The California superior court in this case had no jurisdiction over either Toledo Trust Company, the trustee, or the trust assets. The mere fact that notice of the hearing in the California superior court was mailed to Toledo Trust does not subject Toledo Trust to the jurisdiction of that court. Furthermore, since the trust assets belong to the Roberta Pawlak trust, the California superior court had no jurisdiction over them. See *Hanson* v. *Denckla* (1958), 357 U.S. 235. The majority unpersuasively attempts to distinguish *Hanson* by stating that the California decision "merely sought to ascertain and give effect to the testamentary intent of a California domiciliary," rather than exercise jurisdiction over the trust assets. In my view, this is a meaningless distinction, for how could the California court purport to decide to whom to distribute the trust assets without exercising jurisdiction over those assets?

In summary, the majority opinion is ill-founded because it merely presumes that the California judgment is valid. A closer look, however, reveals that under California law the California superior court had no jurisdiction over the parties or the subject matter in question, rendering the California judgment void. Consequently, I would hold that the California judgment is not entitled to full faith and credit, and I would affirm the summary judgment of the trial court in favor of the Toledo Trust Company. Accordingly, I dissent.